O’NIELL, Chief Justice.
 

 The Democratic Executive Committee for the Parish of East Baton Rouge is appealing from a judgment of the district court ordering the committee to certify to the Secretary of State the name of Louis
 
 *665
 
 S. Prejean, to be printed on the official ballot as a candidate for nomination for the office of City Judge of Baton Rouge, in the Democratic primary election to be held on the 12th day of September.
 

 Prejean and four other individuals filed with the committee their applications, with the required declarations under oath, to be qualified as candidates for the nomination; but, within the time allowed by law, one Douville L. Guillot, in the capacity of a qualified elector, filed with the committee a formal objection and protest against the candidacy of Prejean, on the ground that he was not an elector in the City of Baton Rouge, not having the necessary qualification with regard to actual or bona fide residence in the city. Guillot certified that he had served a copy of his protest and objection upon Prejean; but the latter was at the time absent from the state — was in fact in Mexico — and, having no knowledge that any protest or objection to his candidacy had been made, failed to answer the protest or objection or to make any appearance before the committee, within the 48 hours allowed by law — Section 28 of Act 46 of 1940. On the next day after the expiration of the 48 hours the committee proceeded, in the absence of Prejean, to hear evidence on Guillot’s protest or objection. After hearing the evidence offered in support of Guillot’s objection, the committee announced that anyone present who desired to speak up for Prejean would be permitted to do so. There being no response to the announcement, the committee by unanimous vote ordered Prejean disqualified. He had no knowledge whatever that any objection had been made to his candidacy until the committee had closed its hearing on Guillot’s objection and was ready to disqualify Prejean. H'e was then in Texas, en route to Baton Rouge, and received the information from Mrs. Prejean when he stopped off at Houston to telephone to her. He then communicated with the chairman of the committee, by telephone, from Beaumont, and was informed by the chairman that it was too late to answer Guillot’s objection or protest. The order disqualifying him was rendered by the committee that evening, and Prejean arrived in Baton Rouge the next day. He filed this suit on the next following day, that is, on the second day after the committee had ordered him disqualified. The suit therefore was filed within the time— but on the last day — allowed by law. He averred in his petition that he was an actual and bona fide resident of Baton Rouge and a duly qualified elector, and that the testimony to the contrary, on which the committee had declared him disqualified, was false.
 

 The committee filed eight preliminary pleas or exceptions, and an answer denying the allegations made in Prejean’s petition. After hearing the evidence and arguments on the exceptions and on the merits of the case the judge of the district court overruled the exceptions and gave judgment for Prejean, annulling the ruling of the committee and ordering the committee to certify Prejean’s name to the Secretary of State, to be printed on the official ballot.
 

 The first one of the exceptions filed by the defendant was that the plaintiff had
 
 *667
 
 prayed only for service of citation upon the chairman and the secretary of the committee, although in fact two citations were directed to the committee itself, one of them being served upon the chairman and the other upon the secretary of the committee. Each citation was accompanied by a certified copy of the petition. There was no error in the method of citation. Although in the first paragraph of the prayer of the plaintiff’s petition he aslced for service upon the chairman and upon the secretary of the committee, in the fourth paragraph of the prayer of his petition he prayed for service upon the committee itself through its chairman and also through its secretary, as follows:
 

 “Petitioner further prays that an order issue out of this Honorable Court directed to the East Baton Rouge Parish Democratic Executive Committee, through its Chairman, J. Russell Doiron, and its Secretary, Mrs. Maud Muller Purdy, to answer the above petition within five days after service thereof.”
 

 The second exception filed by the defendant was an exception of nonjoinder of necessary parties, on the ground that the Parish Democratic Executive Committee was not made a party to the suit, and on the ground also that Douville L. Guillot was not made a party to the suit. We concur in the opinion of the district judge that there was no merit in this exception. The Democratic Executive Committee was made the defendant by the fact that in the third paragraph of the prayer of the petition the plaintiff asked that the committee be ordered to certify his name-as a candidate for city judge. Besides, in the fourth paragraph of the prayer of the petition the plaintiff asked, as we have stated, for an order upon the committee to answer the petition within the time allowed by law. There was no necessity for making Douville L. Guillot a party to the suit. He was not a candidate for the office. There was no relief that Prejean could desire or demand of Guillot. He filed his objection to the candidácy of Prejean in the capacity of an elector, just as any other qualified elector in the City of Baton Rouge might have objected, under the provisions of the first paragraph of Section 28 of Act
 
 46
 
 of 1940 — viz.:
 

 “Any person who has filed his application to become a candidate; any qualified elector, and any member of any committee calling a primary election, shall have the right to object to the candidacy of any other person. The objection to such candidacy must be in writing, and must contain, in detail, the reasons for such objections.”
 

 The third exception was an exception of misjoinder of parties defendant, the contention being that the suit was directed against J. Russell Doiron, Chairman, and Mrs. Maud Muller Purdy, Secretary, who were not necessary parties, either individually or in their official capacity. There was no merit in this exception because in fact the suit was not directed against J. Russell Doiron or against Mrs. Maud Muller Purdy, either individually or in the official capacity of either of them. The prayer of the petition was that the order to be issued by the court should be directed
 
 *669
 
 to the Parish Democratic Executive Committee itself. The prayer that the order should issue through the chairman and the secretary of the committee was merely a prayer that the petition and the citation directed to the committee should be served upon the chairman and the secretary. But that did not make them the defendants, either individually or in their official capacity.
 

 The fourth exception filed by the committee was an exception of no right of action, founded upon three contentions, namely, first, that the plaintiff, Prejean, forfeited whatever right of action he might have had to sue the committee, by his failure to make an appearance before the committee in answer to the protest filed by Guillot, or to file with the committee an answer to Guillot’s protest; second, that the plaintiff failed to make the committee a party to the suit; and, third, that the plaintiff failed to pray for a writ of mandamus or a mandatory injunction. The second of these complaints has been disposed of by our pointing out that the suit was brought against the committee and that the prayer of the petition was for service of citation and of a copy of the petition upon the committee through its chairman and its secretary. The first point made in the exception of no right of action, is founded upon the fourth paragraph of Section 28 of Act 46 of 1940, which provides :
 

 “The person whose candidacy is thus objected to shall have forty-eight (48) hours to file his answer.”
 

 In the next and concluding ■ paragraph of this section of the statute it is- provided that, after the hearing on any such objection is closed, and the committee shall have rendered its opinion, “eac-h party shall have the right, and that right is hereby expressly conferred, to appeal to any court of competent jurisdiction for relief.”
 

 The defendant’s argument that Prejean forfeited his right to appeal to any court of competent jurisdiction for relief, by his failure to answer Guillot’s objection within 48 hours, might deserve consideration if Prejean had received the notice of Guillot’s protest and had wilfully refrained from answering it within the 48 hours.-. But the record discloses that Guillot served his protest by placing a copy of it under the door of a former residence of Prejean, which was at the time vacant, and by handing another copy of the protest to a lady at the alleged residence of Prejean at 349 South Twentieth Street, in Baton Rouge. Guillot so certified when he filed his protest with the committee. He certified also that the alleged services of the protest were “made at 6:00 and 5:45 o’clock, respectively, on the 11th day of August, 1944.” That was the date on which Guillot filed his protest with the committee. The committee acted upon it on the next day, August 12th, by allowing Prejean 48 hours, or until August 14th', to answer the protest; and the committee heard the protest and disqualified Prejean the next day, August 15th. During all of that’ time Prejean wa!s in Mexico or on his way home from Mexico, and had no opportunity to answer the protest before the 48 hours had expired.
 
 *671
 
 In these circumstances there would be no justice in holding that Prejean forfeited his right to appeal to the courts by his failure • to answer Guillot’s protest within 48 hours or before the end of the 14th day of August, 1944. He was not in the State of Louisiana or even in the United States at any time between the date of the filing of Guillot’s protest .and the end of the 14th day of August. And he was not in Baton Rouge until the 16th day of August, 1944.
 

 The third point made in the committee’s exception of no right of action, namely, that the plaintiff failed to ask for a writ of mandamus or a mandatory injunction, is without merit. In the fifth paragraph of Section 28 of Act 46 of 1940 it is declared that in a suit like this, to have a decision or ruling of the committee annulled or set aside, the method of procedure shall be, as far as practicable, the same as is thereafter provided for contesting elections. The method of procedure for contesting elections is provided for in Section 86 of the statute, which is a very long section, composed of 8 subsections, lettered from (a) to (h). There is nothing in any of the provisions of this section requiring, expressly or by implication, that the plaintiff in such a suit must ask for a writ of mandamus or a mandatory injunction.
 

 The fifth, sixth, seventh and eighth of the exceptions filed by the committee deal with one and the same proposition; the fifth exception being a plea of prescription based upon Prejean’s failure to answer Guillot’s protest within the 48 hours prescribed in the fourth paragraph of Section 28 of Act 46 of 1940; the sixth exception being a plea of estoppel, also founded upon Prejean’s failure to answer Guillot’s objection within the 48 hours; the seventh exception being a plea to the jurisdiction of the district court ratione materiae because of Prejean’s failure to first answer the protest before the committee; and the eighth exception being an exception of no cause of action, founded upon Prejean’s failure to first answer the protest before the committee. All of these pleas or exceptions are disposed of by the fact that Prejean, being absent from the state, had no knowledge of the protest and no opportunity to answer it before the 48 hours had expired. His right to appeal to the courts was not lost or impaired by his failure to file an answer with the committee within the 48 hours, or by his being absent from the state during that period.
 

 The suit on its merits depends upon the requirement in Section 1 of Article VIII of the Constitution that a citizen of Louisiana, to be an elector, shall have been an actual bona fide resident of the State for two years, of the parish for one year, of the municipality in municipal elections for four months, and of the precinct in which he offers to vote for three months next preceding the election. The contention in this case is that Prejean, who formerly resided and voted in the 7th Precinct of the 9th Ward, which is outside of the City of Baton Rouge, changed his place of residence by moving into the City of Baton Rouge less than four months previous to the election to be held on September 12th. Ever since the year 1941 Prejean has
 
 *673
 
 owned two residences, one at 349 South Twentieth Street in Baton Rouge, where his mother and father and a sister have resided since a date long previous to 1941, and the other residence being in a suburb •of Baton Rouge, called Goodwood Place, where Prejean and his wife and three children resided until April, 1943. In that month he changed his place of residence from his home in Goodwood Place to the home in Baton Rouge. It appears that he then moved into what is called the garage apartment at the Baton Rouge residence, and in March, 1944, he and his wife and children moved into one of the two apartments in the main residence in Baton Rouge, the other apartment in the main residence being occupied by his mother and his father and sister. He contends that his change of residence took place when he moved into the garage apartment, in April, 1943; and in the alternative that, if the change of residence did not take place legally at that time, it took place in March, 1944, when he and his family moved into the main residence in Baton Rouge. It is sufficient for the purpose of this case that the plaintiff and his family have resided at their home in Baton Rouge continuously, actually and in good faith, since March, 1944. That period of residence will have exceeded four months on the date of the municipal election, September 12th, at which election Prejean will be a candidate for the office of city judge. In fact the four months had expired, and Prejean was qualified to vote in Baton Rouge, at the time when the committee adjudged him disqualified.
 

 It is argued for the executive committee that Prejean’s registering to vote in Baton Rouge was illegal because he had not resided four months in the city at the time when he registered. It is contended that he registered to vote in Baton Rouge on the 15th day of May, 1944; but the fact is that he did not register on that date but merely changed his voting place then. He had registered on May 12, 1942, as a resident of the 7th Precinct of the 9th Ward, where he had resided since April 26, 1941; and on the 15th day of May, 1944, he merely changed his voting place by furnishing the affidavit required by Section 4 of Article II of Act 45 of 1940. The statute provides that in the event a person who has previously registered shall move from one ward or precinct to another ward or precinct in the same parish it shall be unnecessary for him to reregister, but that he shall be required to make application to the registrar prior to the date of any primary or general election, for the change of his place of registration. This section of the act provides also that, upon such application the registrar of voters shall erase the applicant’s name from the precinct register in the ward and precinct from which he has moved, and shall make entry in the precinct register of the ward and precinct to which he has moved, and that this entry shall be made as of the date appearing on the precinct register of the ward and precinct from which he has moved. All of which was done. Prejean was therefore a qualified' elector in Baton Rouge, as far as his term of residence was concerned, as soon as
 
 *675
 
 he had resided four months in Baton Rouge. The committee’s argument that Prejean’s so-called registration — which was in fact only a change of his voting place — on May 15, 1944, was not a valid registration is founded upon the provision in Section 1 of Article II of Act 45 of 1940 that in order that a .person “shall be eligible for registration as a voter” he shall have been a resident of the State, parish, ward, municipality and precinct for the periods prescribed in Section 1 of Article VIII of the Constitution. If there is a conflict between the provisions of Section 1 of Article VIII of the Constitution, prescribing the residence qualifications for a person to be entitled to vote, and Section 1 of Article II of Act 45 of 1940, requiring the same residence qualifications for a person to be eligible for registration as a voter, the provisions of the Constitution on the subject must prevail over the statute; and hence the periods of residence prescribed by both the Constitution and the statute must be reckoned back from the date of the election at which the elector offers to vote, and not from the date on which he offers to register. But in this case the undisputed records of the registration office show that on May 12, 1942, when Prejean registered as a voter in the 7th Precinct of the 9th Ward, in which he then had his Goodwood residence, he had resided there continuously since April 26, 1941, or for a period of one year, one month and sixteen days, and had resided in the State from the date of his birth.
 

 The evidence heard by the judge convinces us that Prejean was a qualified elector, entitled to vote in the City of Baton Rouge, as far as the validity of his registration and the term of his residence was concerned, at the time when the committee declared him disqualified.
 

 It is argued for the appellant that the judgment appealed from is null because it orders the committee to certify Prejean’s name to the Secretary of State, instead of ordering his name certified to the Mayor of the City of Baton Rouge. Section 36 of Act 46 of 1940 requires that the ballots to be used in primary elections for the office of United States Senator, Congressmen, Governor, or for any other officer to be voted for throughout the State, or for any officer to be voted for in any district, parish or ward in the State, shall be furnished by the Secretary of State and at the expense of the State; but that the ballots and supplies to be used in primary elections for any municipal officer to 'be voted for only in a municipality shall be furnished by and at the expense of the-mu- . nicipality in which the election is to be held. And Section 39 of the same act provides that the ballots to be furnished by a municipality shall be certified to, as the official ballot, by the Mayor, and that the certificate shall be printed on the back of the ballot over the facsimile signature of the Mayor. It seems therefore that the judgment appealed from is erroneous in so far as it orders the committee to certify Prejean’s name to the Secretary of State, instead of ordering the name certified to the Mayor of Baton Rouge. This error was not referred to and apparently not observed by anyone before the judgment was
 
 *677
 
 rendered and appealed from. It appears that all parties assumed that the names of the candidates should be certified to the Secretary of State. The reason for that, very likely, was that the 12th day of September, 1944, the day on which this municipal primary election for a city judge will be held, is the date on which the Democratic primary election throughout the whole state, for a United States Senator, for Congressmen, and throughout certain districts for district offices, will be held. Previous to the date on which Act 257 of 1944 went into effect, that is, previous to the 26th day of July of this year, the city judge of Baton Rouge was not an elective officer but an appointive officer. The office was made an elective office by the act of 1944. The first complaint of that part of the judgment appealed from, which directs the committee to certify Prejean’s name to the Secretary of State, instead of directing the committee to certify the name to the Mayor of Baton Rouge, was made when the attorneys for the appellant, executive committee, contended in their brief that Act 257 of 1944 contained a provision requiring that the names of the candidates for nomination for the office of cify judge should be certifiéd to the Mayor of Baton Rouge. There is no such-provision in that statute; but, in the oral argument of the case before this court, counsel for the committee explained that they were referring to the provisions of Sections 36 and 39 of Act 46 of 1940.
 

 It is contended for the committee, and may be cpnceded for the purpose of the argument, that the error of the judge, in directing the committee to certify Prejean’s name to the Secretary of State, instead of directing the committee to certify the name to the Mayor of Baton Rouge, was induced by the error made in the prayer of the plaintiff’s petition. But that is a matter of no importance because an error of law made in the pleadings by a litigant is not controlling or binding even upon the one who commits the error.
 

 The only question before us on this subject is whether the error in the judgment, by which the committee was ordered to certify Prejean’s name to the Secretary of State, and was not ordered to certify the name to the Mayor, has the effect of annulling that part of the judgment which decrees that the action taken by the committee on August 15, 1944, disqualifying Prejean as a candidate, is “rescinded, annulled and set aside, and adjudged to be illegal, null and void, and of no effect.” The judgment appealed from is in two separate paragraphs. The decree in the first paragraph is that the action taken by the Democratic Executive Committee on August 15, 1944, disqualifying Louis S. Prejean as a candidate for the office of city judge' in the Democratic primary election to be held on September 12, 1944, is rescinded, annulled and set aside, and adjudged to-be illegal, null and void and of no effect. If the judgment had stopped'there it would have given Prejean all the relief that he wanted or could have asked for, because it would have left it to the committee to perform its mandatory duty to certify Prejean’s name to the Mayor of .Baton Rouge, as a candidate for the nomination
 
 *679
 
 for the office of city judge. That part of the judgment or decree appealed from is correct and shall be affirmed. The remaining part of the judgment or decree, the part which orders the committee to certify Prejean’s name to the Secretary of State, instead of leaving the committee to perform its mandatory duty to certify the name to the Mayor of Baton Rouge, is erroneous. To that extent the committee, as appellant, is entitled to have the judgment set aside. But the setting aside of that part of the judgment which is conceded to be and is obviously contrary to the law, and which is not at all essential to the decree adjudging the committee’s disqualifying of Prejean to be null and of no effect, should not and does not have the effect of giving validity to the action of the committee in disqualifying Prejean as an elector or as a candidate for the nomination for the office of city judge.
 

 Our setting aside of that part of the judgment which orders the committee to certify Prejean’s name to the Secretary of State may seem to be an amendment of the judgment in favor of the appellee, Prejean. But that is not true because that part of the decree which orders the committee to certify Prejean’s name to the Secretary of State is mere surplusage; for it is the mandatory duty of the committee to certify Prejean’s name, along with the names of the four other candidates for nomination for the office of city judge, to the Mayor of Baton Rouge — with or without a judicial decree ordering the committee to perform that duty. The committee, in finding Prejean to be disqualified as a candidate, acted in a quasi-judicial capacity; and there is no reason to doubt that when the committee’s error of judgment is corrected, as in this case, the committee will cheerfully perform its duty by certifying Prejean’s name, along with the names of the four other candidates, to the proper officer, as designated by law. The committee has no concern in the matter beyond the desire to perform its official duty impartially.
 

 Prejean, in his petition, averred that Guillot was not a qualified elector in the City of Baton Rouge, or in the Parish of East Baton Rouge, at the time when he protested against the candidacy of Prejean. Guillot had resided in Plaquemine, in the Parish of Iberville, up to the time when he moved to Baton Rouge; and Prejean contended that the time when Guillot changed his place of residence from Plaquemine to Baton Rouge was less than a year before he filed his protest against Prejean’s candidacy. The evidence leaves some doubt whether a year had elapsed from the time when Guillot moved to Baton Rouge; but, for the purpose of deciding this case, we have assumed that Guillot had resided in Baton Rouge and in the Parish of East Baton Rouge long enough to be qualified to make the objection to Prejean’s candi-'* dacy.
 

 The judgment appealed from is affirmed in so far as it decrees that the action of the Democratic Executive Committee taken on-, August 15, 1944, declaring Louis S. Prejean disqualified as a candidate for the office of City Judge of Baton Rouge, is “rescinded, annulled and set aside, and ad
 
 *681
 
 judged to be illegal, null and void, and of no effect,” is affirmed, and, accordingly, the appellant, Democratic Executive Committee, is now ordered to certify to the proper officer, as provided in Sections 36 and 39 of Act 46 of 1940, the name of Louis S. Prejean as a candidate for nomination for the office of City Judge of Baton Rouge, in the Democratic Primary Election to be held on September 12, 1944. The appellant is to pay the costs of this suit.
 

 ODOM, PONDER, and HAMITER, JJ., absent.